IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RONNIE BROOKS

      Plaintiff,

                                                         Civ No. 2:24-cv-01276-JHR-GBW

vs.

JOSHUA THOMAS,
T'MADRE HARRIS,
JAMES TEAGUE,
TAIWAN SMITH,
JONAH TREVINO, AND
THE CITY OF HOBBS,

      Defendants.

## REPLY IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Ronnie Brooks ("Plaintiff") files this Reply in Support of Plaintiff's Motion for Partial Summary Judgment, and in support states as follows:

### Summary of Reply

Defendants' behemoth of a Response[1] focuses on proving up something that is obviously true: Defendant Officers made a mistake. Yet despite its length, the Response fails to address the elephant in the room—a mistake based on a *hunch* does not pass constitutional muster. And at the end of the day, the body camera footage conclusively shows Defendants acting on a hunch when

---

[1] Defendants' Response and Cross-Motion is 54 pages long. It is not clear which of these pages constitute the Response and which constitute the Cross-Motion, and the arguments overlap. Plaintiff will refer to the entire document as "the Response." Plaintiff will attempt to address Defendants' key Response arguments here, and will address further arguments in Plaintiff's own Response to the Cross-Motion, due September 19, 2025. Plaintiff has separately filed a Motion to Strike Defendants' declarations. Plaintiff incorporates that document herein and objects to Defendants' declarations for the reasons stated in the Motion to Strike.

1

they detained Plaintiff.  That is the end of the analysis, and Defendants cannot muddy the waters by creating facts that are not true.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Haynes never said white shirt.  He never said, "that guy sitting on the sidewalk."  He never "pointed" in Plaintiff's direction.  He never described or identified Plaintiff in any way, even though *Plaintiff was right there*.  If a video shows a driver careens through a red light, the driver cannot create a fact issue by submitting a declaration claiming the light was green.  For sure, the driver could claim he reasonably believed the light was green, but that would only matter if reasonableness of the mistake matters for the plaintiff's claims.  The driver still ran a red light.

     Moreover, what mistake does the Response argue the officers made?  Defendant Officers do not claim they *misheard* Haynes.  Rather, Defendant Officers' (and specifically, Teague's) "mistake" (if it can be called that) was to jump to the conclusion that Plaintiff was the assailant, based solely on the fact that Haynes said Keith Wright lived in the general area.  But that is precisely the kind of leap (hunch) that law enforcement is prohibited from making.  It is as if Haynes told the officers his assailant was "at the mall," and the officers looked around the mall and detained the first person they saw.  Hunches like that do not suffice for reasonable suspicion. *U.S. v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996) ("While an investigative detention does not require probable cause, it does demand something more than an inchoate and unparticularized suspicion or "hunch.") (internal quotations omitted).[2]

---

[2] To be clear, Defendant Officers could have simply approached Plaintiff and asked him questions.  Perhaps it would have been prudent to do so, as they might have done with any other witness.  Indeed, there were several other people near Plaintiff at the time of his detention.  One can see

Ultimately, this incident is on video from multiple angles. There is no dispute of material fact. Defendant Officers detained Plaintiff on a hunch. They cannot do that. Summary judgment for Plaintiff is proper.

## Argument

**A. Defendant Officers' "mistake" theory misses the point.**

Defendants' "reasonable mistake" argument is based on the premise that, because "Haynes pointed in Plaintiff's direction while he described Mr. Wright's vehicle and the location of other nearby vehicles," and because "Haynes further identified 'Keith Wright' as the aggressor amidst these descriptions," therefore, "officers reasonably believed Haynes was pointing at Plaintiff...." Resp. at 29.

The problem for Officer Defendants is you cannot make bricks without clay; Haynes never pointed at Plaintiff. The body camera footage shows Teague identify Plaintiff to Thomas at the 9:10:52 mark,[3] so it is Haynes' pointing before this time that is relevant. As of this timestamp, the only "pointing" Haynes had done was to gesture (with his phone) towards the general area *north* of Haynes, behind the white pick-up truck, 90 degrees *away* from where Plaintiff was sitting. As of this timestamp, Haynes had *not* pointed toward the western end of the street, at least not that

---

them on the videos. Yet Defendant Officers focused on Plaintiff. Put slightly differently, Defendant Officers were free to investigate the reported crime (and should have done so). But the reported crime did not give rise to reasonable suspicion to detain everyone who may have been in the general vicinity. *Cf.*, Resp. at 7 (citing *Baptiste v. J.C. Penny Co.*, 147 F.3d 1252, 1259 (10th Cir. 1998) for proposition that probable cause "requires officers to reasonably interview witnesses readily available at the scene, investigate basic evidence, or otherwise inquire if a crime has been committed at all ***before invoking the power of a warrantless arrest and detention***.") (emphasis added).

[3] Defendants make numerous comments about Plaintiff's time citations being incorrect. Plaintiff is not sure what Defendants are talking about. Plaintiff cited to the time of day, whereas Defendants cited to the time stamps of the specific videos. That does not make Plaintiff's citations incorrect. The time of day is visible on all the videos.

can be seen on the body cameras.[4]  Haynes did not point toward Plaintiff, or at anything near Plaintiff.  Haynes did not point toward any car parked near Plaintiff.  Haynes did not point toward any house or group of houses on the western end of the street.  The notion that Teague acted because of Haynes' pointing in Plaintiff's direction is simply wrong.

Along those same lines, Teague says he thought Haynes identified Plaintiff as Keith Wright (Teague Decl. at ¶12), but again, Defendants are not entitled to their own facts.  Haynes was clearly referring to the person who chased him as Keith Wright.  Haynes was not purporting to identify any specific individual—let alone Plaintiff—as Keith Wright.  If we know anything about Haynes from the body camera footage, it is that he cared intently about finding and stopping his assailant; that is why he called the police to begin with.  If the assailant had been right there sitting on the sidewalk, Haynes would have identified him to officers.  Haynes would have said, "it's that guy," or "he's sitting right there," or "it's the short black man in the white shirt."  Teague's purported[5] belief that Haynes was intending to identify Plaintiff is not based on particularized facts.  Or any facts..  Thus, it was unreasonable for Teague to dispatch his fellow officers to perform a *Terry* stop on Plaintiff.  As Judge Arthur pointed out, laying hands on random people only escalates danger, not the other way around.

It is also evident from the body camera footage that Haynes' purported "pointing" had

---

[4] Teague says in his Declaration that "Mr. Haynes pointed west down the street" (¶8), but none of the videos show such pointing.  To the extent Teague is relying on his memory about where Haynes pointed, Teague's own Declaration acknowledges that his memory of his interaction with Haynes is unreliable (Teague Decl. at ¶35), so Teague's recollection is worth less than zero in this regard.
[5] Teague's Declaration provides other reasons to question his credibility.  For example, Teague says in Paragraph 35 that after looking at body camera footage he realized Haynes did not "directly" describe Plaintiff's physical description.  The adverb "directly" is doing a lot of work here.  Haynes did not describe Plaintiff's physical description, at all, whether directly or indirectly.  It is hard to take anything in the Teague Declaration seriously.  Plaintiff urges the Court to watch the body camera footage.

nothing to do with why Teague identified Plaintiff to Thomas. Teague did not tell Thomas, "Haynes is pointing toward that man," or anything about pointing. Teague merely told Thomas, "white shirt," something Haynes had never said. Teague had a hunch and shared it with Thomas. This is what the videos show.[6]

Defendants emphasize that Haynes described Mr. Wright's vehicle as "that black car, right there in front of the, right there at the house." Resp. at 4. But how does that defeat summary judgment? Haynes was describing a vehicle, not a person, and this is not a case where officers pulled over the wrong car. If Haynes meant to identify a person, *he would have identified a person*. That Plaintiff was sitting right there yet Haynes was identifying a vehicle strongly suggests Plaintiff was *not* the assailant.

Defendants spend much time discussing *Sherouse v. Ratchner*, 573 F.3d 1055 (10th Cir. 2009), but this case only further illustrates how unreasonable Defendant Officers' actions were here. In *Sherouse*, a witness to a robbery reported to police that the robber was a black female, around 5'2, and between 110 and 120 pounds, possibly a juvenile. *Id.* at 1058. Separately, another person called police and reported that two teenage girls were sitting on a curb, acting suspiciously, in an area near the robbery. *Id.* One of the girls was black; the other Hispanic. *Id.* The police arrested the black girl and summoned multiple witnesses from the robbery. *Id.* The witnesses identified the black girl as the robber, though no one identified the Hispanic girl. *Id.* Based on this record, the court found probable cause for the arrest of the black girl but not the Hispanic girl. *Id.* at 1061-62. Contrast *Sherouse* with what happened here. No one argues Plaintiff was acting

---

[6] Defendants are correct that the officers' conduct must be evaluated objectively, not subjectively. Resp. at 34-35. But Defendants are incorrect that "Haynes' report objectively identified Plaintiff." Res. at 34. Look at the body camera footage. There is nothing Haynes does prior to the 9:10:52 mark that implicates Plaintiff in any way. To the extent Teague sincerely thought Haynes identified Plaintiff, he was acting unreasonably.

5

suspiciously. Haynes identified a car and a house, but not Plaintiff. Unlike the police in *Sherouse*, Defendant Officers never asked Haynes, "Is that guy your assailant?" *Sherouse* only highlights how poorly Defendant Officers here behaved.[7]

Buried deep in their Response, Defendants write: "The HPD officers' mistake was based on a mistaken inference from the only apparent witness/victim Mr. Haynes plus supporting circumstantial evidence supporting the plausibility of Plaintiff as the aggressor also based on his proximity to where the crime was committed." Resp. at 40. But an "inference" is a conclusion based on facts. Haynes provided zero facts to support the inference that Plaintiff was the assailant. If by "circumstantial evidence" Defendants mean Plaintiff's presence on the street, that is true, though Defendants surely do not mean reasonable suspicion existed to detain everyone in the neighborhood. In other words, Defendants had a hunch and detained someone based on that hunch.

**B.  Purported exigent circumstances do not excuse Defendant Officers from detaining Plaintiff based on a hunch.**

Defendants do not argue the purported "dangerous circumstances" *excuse* the reasonable suspicion requirement, but rather that dangerous circumstances are relevant in assessing the reasonableness of Defendant Officers' conduct. Resp. at 29. Here again though, Defendants cannot manufacture facts to create a triable issue. The bodycam footage shows the weather was clear, and the neighborhood was quiet. Neither Haynes nor anyone else reported that shots were fired. All the officers knew is that Keith Wright had supposedly chased Haynes, specifically, not

---

[7] *Sherouse* was a probable cause case, not a reasonable suspicion case, though the *Sherouse* court's discussion of why there was no probable cause for the Hispanic girl is instructive here. The court reasoned that probable cause requires "more than a mere suspicion of criminal activity." *Sherouse*, 573 F.3d at 1062. "There were many plausible explanations for [the Hispanic girl's] behavior" in Sherouse. *Id.* "Where an officer observes inherently innocuous behavior that has plausible innocent explanations, it takes more than speculation or mere possibility to give rise to probable cause to arrest." *Id.* The same logic applies here, where Plaintiff was merely sitting on the sidewalk.

others in the neighborhood.  When officers arrived, there was no active shooter, and no one was chasing Haynes.

Moreover, nothing about the officers' behavior suggests they thought a dangerous gunman was nearby.  The bodycam footage shows that none of the officers drew their guns, and up until the moment the officers detained Plaintiff, they were walking at a leisurely pace.  There was nothing happening to suggest anyone thought an active shooter situation existed.[8]

The supposed exigency is further undermined by the fact that, to Plaintiff's knowledge, the real Keith Wright was never apprehended or charged with assaulting Haynes.  If Keith Wright were really such a dangerous monster, terrorizing this community as Defendant Officers now claim, one would think they would have investigated further after discovering Plaintiff was the wrong man.  Instead, Defendant Officers arrested Plaintiff and Haynes (who had a warrant), and forgot all about Keith Wright.  The bottom line is that the supposed dangerous, exigent conditions simply did not exist.  Again, the bodycam footage speaks for itself.

That said, even if Defendant Officers truly and reasonably believed there to be a gun-wielding assailant in the vicinity, that is reason to proceed with more caution, not less.  Back to a car example, if it is raining, perhaps the driver should slow down.  The driver should not go 20 mph over the speed limit, crash, and then say the crash was excusable because it was raining.  Here, if there truly had been a gun-wielding assailant on the loose, the thing to do would *not* have been, "zero in on the nearest black male civilian."  The thing to do would have been to gather more information and not act on a hunch.  This is what Judge Arthur held in his well-reasoned order

---

[8] Teague's Declaration references "multiple bystanders" on the street. Resp. at Ex. 2, ¶18.  Yet Teague and other Defendants are silent about why Defendant Officers zeroed in on Plaintiff and not these "multiple bystanders."  From the videos, one can see the "multiple bystanders" in the same area as Plaintiff.

7

granting the motion to suppress. Ex. A-7. As Judge Arthur observed, sufficient time had passed between the purported assault and the officers' arrival to warrant a more thorough investigation. The seriousness of the crime was reason to act with more caution, not less.

Defendants cite *State v. Arredondo*, 1997-NMCA-081 (Resp. at 43-44) in support of their "exigency" argument, but the arrestee conceded reasonable suspicion in that case. *Id.* at ¶13 ("[The criminal] Defendant does not dispute the reasonableness of [the officer's] initial suspicion that Defendant or Defendant's vehicle recently had been involved in an aggravated assault."). *Arredondo* concerned whether the purported exigency justified search of the suspect's vehicle after the suspect had already been detained. Here, reasonable suspicion did not exist to detain Plaintiff in the first place. Defendants also argue there was more basis for reasonable suspicion in this case than in *Arredondo* (Resp. at 44), but that is not so. The assault victim in *Arredondo* reported the specific color, make, and model of the car (a maroon Chevrolet Monte Carlo), and he provided one of the letters in the license plate of the car, "J," all of which matched the defendant's car. *Id.* at ¶¶2-3. The defendant even made evasive maneuvers when he encountered the police. *Id.* at ¶¶3-4.[9] Compare that to here. At most, Haynes identified a car in Plaintiff's vicinity, and he did not identify any license plate or make/model. Until Defendant Officers tried to force him up, Plaintiff made no evasive maneuvers, exactly the opposite of what one would expect if Plaintiff had actually assaulted Haynes. If Plaintiff were the assailant and had some connection to the house or car as Haynes purported to indicate, why would Plaintiff have been sitting on the sidewalk in plain sight as multiple police officers enter the neighborhood? Why not seek refuge in the house? The one thing Defendant Officers knew about the assailant from Haynes was he was in a car. Why

---

[9] Presumably this is why the criminal defendant in *Arredondo* did not contest reasonable suspicion as to the underlying detention.

not use the car to drive away? Why park the car, get out onto the sidewalk, and wait for the police? Defendants have no answers for these questions.

### C. *Romero* and other Tenth Circuit cases bar Defendant Officers from relying on qualified immunity.

Defendants' attempts to distinguish *Romero* are unconvincing. Defendants say "[t]he *Romero* reporting party's vandalism complaint lacked credibility" (Resp. at 51), but that mischaracterizes *Romero*. In *Romero*, there was no reason to doubt the underlying vandalism occurred, just as there is no reason to doubt someone named Keith Wright threatened Haynes with a gun. What "lacked credibility" was the witness's identification of the suspect based merely on seeing the suspect in the same parking lot as the vandalism. At least in *Romero*, the witness did identify the suspect, unlike Haynes.

Defendants' other attempts to distinguish *Romero* fail. Citing *Romero*, Defendants say that "[p]laintiff's temporal and geographic proximity to the crime alone [wa]s not sufficient [] to provide [the officers] with reasonable suspicion" (Resp. at 51), but that is precisely Plaintiff's point. Defendants say "the *Romero* court did not find a case sufficiently on point sufficient to prove a clearly established violation" (*id.*), but this is just wrong. *Romero* did find a clearly established violation, and it cited *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008), *State v. Gutierrez*, 2007-NMSC-033, and N.M.S.A. § 30–22–1(B). *Romero*, 672 F.3d at 888-89. Defendants also say "*Romero* was too dissimilar from the facts leading to a finding of reasonable suspicion in *Id.*" Resp. at 51. It is not clear what this sentence means. "*Id.*" appears to refer to *U.S. v. Davis*, 94 F.3d 1465 (10th Cir. 1996), but *Davis* was another case where the Tenth Circuit found no reasonable suspicion, so *Davis* is similar to *Romero*, not dissimilar.[10]

---

[10] *Davis* also helps Plaintiff as it stands for the proposition that a suspect's general proximity to a crime (illegal alcohol joint in *Davis*) does not create reasonable suspicion. Applied here, Plaintiff's

9

Defendants are correct that a mistake was not at issue in *Romero* the same way it is here, but this only helps Plaintiff's argument. From an objective standpoint, prior to detaining Plaintiff, all the Defendants Officers had to go on *at most* was that a reporting party (Haynes) said his assailant was in the general vicinity of part of the neighborhood, and Haynes identified what may have been his assailant's car. Under *Romero*, such a general statement from a witness is not enough to find reasonable suspicion to detain Plaintiff. Defendants are also correct that the reporting party in *Romero* was not the victim of an assault whereas Haynes was (Resp. at 52), but that only helps Plaintiff's argument. Being the victim, Haynes had more knowledge about the crime than the witness in *Romero*, yet he still did not identify Plaintiff even though Plaintiff was right there.

Defendants seem to be[11] relying on *U.S. v. Sanchez*, 519 F.3d 1208 (10th Cir. 2008), arguing that the current case is more similar to *Sanchez* than it is to *Romero*. But *Sanchez* only highlights what actual reasonable suspicion is. In *Sanchez*, the reporting party told officers the specific intersection at which the alleged assault took place, and the color of the shirt worn by the suspect. *Id.* at 1211-12. The officers reported to the specified intersection, and detained an individual wearing that same color of shirt. *Id.* Compare that to Haynes' vague gestures and his lack of any physical or other description. Indeed, the only description Haynes gave ("Keith Wright") the Defendant Officers did not even use prior to detaining Plaintiff.

While Plaintiff contends *Romero* is most on point, other Tenth Circuit cases also clearly establish the principle that a vague report by a witness does not establish reasonable suspicion. *E.g., Lundstrom v. Romero*, 616 F.3d 1108, 1123 (10th Cir. 2010) (neighbor calling 911 and reporting potential child abuse at a home did not give rise to reasonable suspicion to handcuff

---

general proximity to where a crime may have been committed does not create reasonable suspicion.
[11] This section of Defendants' Response is not the model of clarity.

resident); *Cortez v. McCauley*, 478 F.3d 1108, 1122-23 (10th Cir. 2007) (nurse reporting that a two-year old had reported potential sexual assault in home did not give rise to reasonable suspicion to detain babysitter).

### D. Reply to Defendants' Disputes of Plaintiff's Facts.

Plaintiff will address the key facts disputed by Defendants:

- **PSMF 6**: Plaintiff agrees Haynes said, "that black car, right there in front of the, right there at the house." But Haynes said this in reference to the vehicle his assailant was in. In no world could this mean, "My assailant is the young black man sitting on the sidewalk near the house and the car." To the extent Defendants argue that Haynes' statement about the car created reasonable suspicion as to everyone in the area of the car, this is contrary to *Romero*, where plaintiff's being in the area of the parking lot was not sufficient to create reasonable suspicion. Think also about the mall example. "He's at the mall!" does not create reasonable suspicion as to everyone at the mall.

- **PSMF 7**: Plaintiff agrees with Defendants' statement that the videos do not show Haynes pointing toward the houses on the western end of the street. Haynes does not appear to have pointed in that direction at all. From the video, to the extent Haynes pointed anywhere, he pointed north of the street, beyond the white pick-up, over a wall. Defendants' assertion that "the officers reasonably inferred Haynes was pointing at Plaintiff" is conclusory, *ipse dixit*. Again, it is like the driver who claims the light was green when it was red. The driver may have indeed thought that, but that does not make his belief reasonable.

- **PSMF 8**: Defendants now claim Trevino was not within earshot of Haynes, but Trevino said he heard Haynes identify his assailant as Keith Wright in the incident report. Either way, whether Trevino and Thomas heard Haynes does not matter. This all started with Teague acting on a hunch after listening to Haynes garble and gesticulate for around ten seconds.

- **PSMF 16**: Defendants call this paragraph "misleading," but every sentence is true. Teague, Thomas, and Van Zandt could have asked Haynes for further identifying information about his assailant (height, age, race), but they did not. Instead, Teague assumed he had it figured out. Thomas went along with it, and Van Zandt stood there.

- **PSMF 21**: Plaintiff does not understand what Defendants dispute about this paragraph. Officer Smith told Plaintiff that someone accused Plaintiff of pointing a gun at someone. Of course Smith's underlying statement was false. But Smith did say it.

- **PSMF 23, 26**: Plaintiff respectfully submits that when three police officers with guns surround you, grab your shoulder, and tell you to stand up, you are being physically forced to stand up.

- **PSMF 39**: Harris' conduct toward Haynes is certainly gaslighting. Harris did not know what Haynes had told the other officers, yet Harris insisted to Haynes that Haynes said something he never said. This is gaslighting.

- **PSMF 43**: Again engaged in circular reasoning (*cf.*, PSMF 7), Defendants say Haynes "offered sufficient information to reasonably infer Haynes was implicating Plaintiff." Notably, this statement is not followed by an explanation of what exactly Haynes did that implicated Plaintiff. Was it Haynes' pointing north toward the white pick-up? Was it Haynes' identification of a car whose color Haynes did not even know? Was it his identification of "Keith Wright" (or a car) as being "at that house"? Defendants never say.

## Conclusion

For the reasons stated here and in Plaintiff's Motion, Plaintiff respectfully requests the Court grant it partial summary judgment on the issue of Defendants' liability under Section 1983 and on Defendants' defense of qualified immunity.

Date: August 11, 2025

Respectfully submitted,

WGLA, LLP

*/s/ Curtis Waldo*

Benjamin Gubernick (SBN 145006)
Curtis Waldo (SBN 163604)
Ben@wglawllp.com
curtis@wglawllp.com
346-394-8056
717 Texas St., Suite 1200
Houston, TX 77002

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of August, 2025, I caused the foregoing document to be served on all counsel of record in compliance with the Federal Rules of Civil Procedure.

　　*/s/ Curtis Waldo*_____

Curtis Waldo

13