IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RONNIE BROOKS

    **Plaintiff,**

                            Civ No. 2:24-cv-01276-JHR-GBW

vs.

**JOSHUA THOMAS,**
**T'MADRE HARRIS,**
**JAMES TEAGUE,**
**TAIWAN SMITH,**
**JONAH TREVINO, AND**
**THE CITY OF HOBBS,**

    **Defendants.**

**PLAINTIFF'S OPPOSITION TO**
**DEFEDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

    Plaintiff Ronnie Brooks ("Plaintiff") files this Opposition to Defendants' Cross-Motion for Summary Judgment ("Cross-Motion"). Plaintiff has already filed a Reply Brief [Dkt. #31] that explains why summary judgment for Plaintiff and not Defendants is proper, and Plaintiff incorporates that Reply Brief herein. Plaintiff also incorporates the arguments and evidence he submitted in support of his own summary judgment motion [Dkt. #6] herein as the basis for why summary judgment for Defendants is improper. In further opposition, Plaintiff states as follows:

**PRELIMINARY STATEMENT**

    Defendants' Cross-Motion is based on the premise Officer Teague's mistake was "reasonable," but whether an officer's mistake is reasonable is a paradigmatic fact issue. *Clerkley v. Holcomb*, 121 F.4th 1359, 1363 (10th Cir. 2024) (reasonableness of officer's mistaken perception involved a question of fact preventing qualified immunity at summary judgment stage); *Finch v.*

1

*Rapp*, 38 F.4th 1234, 1242 (10th Cir. 2022) ("Whether [the officer] reasonably believed [the plaintiff] presented any threat is a genuine issue of fact for the jury to determine."); *Maestas v. Lujan*, 351 F.3d 1001, 1010 (10th Cir. 2003) (authorizing jury to decide "the objective reasonableness of [an officer]'s actions" when "disputed issues of material fact...are dispositive").[1]

Plaintiff has not deposed Officer Teague. No jury has analyzed Teague's belated claims of exigency. The officers' conduct as well as their Declarations raise significant concerns about their credibility. *See* Reply [Dkt. #31] at p. 4, notes 4-5. As non-movant, Plaintiff is entitled to all reasonable inferences in his favor, which precludes taking Teague at his word at this juncture

But more than that, Defendants' "mistake" argument misses the point. As Defendants concede,[2] the test for reasonable suspicion is objective reasonableness. The subjective beliefs espoused by officers in their self-serving, lawyer-written Declarations that they did not even sign are irrelevant. This incident is all on video. All that matters is, based on the 25 seconds officers had with Haynes prior to Teague's identification of Plaintiff, would a reasonable officer have specific and articulable facts to detain Plaintiff? Plaintiff has moved for summary judgment on the issue of liability because the answer is no.

At most, whether the facts available to the officers supported a reasonable inference that Plaintiff was the assailant is a fact question for the jury. Thus, Defendants have failed to meet their

---

[1] *See also Wealot v. Brooks*, 865 F.3d 1119, 1128 (8th Cir. 2017) (concluding that a mistake by police officers, who shot an unarmed man, did not entitle them to qualified immunity at the summary judgment stage because a reasonable fact-finder could regard the mistake as unreasonable given the existence of conflicting accounts); *Floyd v. Detroit*, 518 F.3d 398, 401, 408 (6th Cir. 2008) (concluding that a police officer's mistake in shooting an unarmed man did not trigger qualified immunity through a summary judgment motion because the objective reasonableness of the mistake would have been for the factfinder to resolve); *Wilkins v. Oakland*, 350 F.3d 949, 955 (9th Cir. 2003) (stating that the reasonableness of an officer's factual mistake, for purposes of qualified immunity, "depends on disputed issues of material fact" that are better resolved by a jury rather than the court as a matter of law).
[2] *E.g.*, Cross-Motion at p.6.

burden under Rule 56, and the Court should deny Defendants' Cross-Motion for Summary Judgment.

**RESPONSE TO ADDITIONAL UNDISPUTED MATERIAL FACTS**

Plaintiff incorporates the Statement of Material Facts from his Motion for Partial Summary Judgment [Dkt. #6]. Plaintiff responds to Defendants' Additional Undisputed Material Facts ("AUMF"), located at pages 15-24 of the Cross-Motion and states as follows:

1.  Plaintiff disputes AUMF ¶3. Haynes did not point west. To the extent he was pointing anywhere, Haynes was pointing north, toward the white pick-up truck behind him.[3] Plaintiff further states that Defendants' references to street addresses are confusing and unsupported. None of the officers referenced specific street addresses during the relevant 25 seconds, nor did Haynes. Defendants seem to be using these street addresses because they were included in officers' later reports, but as Defendants concede in footnote 6, Defendants mixed up these addresses, incorrectly stating Plaintiff was at 1401 East White Street. These street numbers do not matter insofar as the officers had no idea what the numbers were when they acted on their hunch and detained Plaintiff. But the fact that they could not get the numbers right in their report further undermines their credibility.

2.  Plaintiff disputes AUMF ¶4. Haynes did not point toward Plaintiff or toward any vehicle at the west end of the street, at least not during the 25 seconds before Teague acted on his hunch and identified Plaintiff as the assailant.[4]

3.  Plaintiff disputes AUMF ¶5. The officers did not know the 1403 East White address when they headed toward Plaintiff. Neither Haynes nor any other officer mentioned this address.

---

[3] Dkt. #6 at Ex. A-2, 9:10:24 through 9:10:49.
[4] *Id.*

3

4.  Plaintiff disputes AUMF ¶10.  Plaintiff disagrees there was "potential gun violence."  This is contradicted by the officers' conduct and the body camera footage.  *See* Reply Brief [Dkt. #31] at pp.6-9.

5.  Plaintiff disputes AUMF ¶11.  Plaintiff disagrees the street was about to escalate into gun violence.  *See* Reply Brief [Dkt. #31] at pp.6-9.  Also, Teague's Declaration does not support the statements in AUMF ¶11.  While Teague professes some general concern about a potential gunman, he does not say he thought Plaintiff was about to sprint 100 yards toward Haynes, in the midst of six police officers, and start shooting.  Nor would it have been objectively reasonable for Teague to think this.  Again, Teague's subjective beliefs are not relevant.

6.  Plaintiff disputes AUMF ¶12.  The professed "misunderstanding" was not reasonable on an objective basis.  Plaintiff also contends there was no actual "misunderstanding."  Teague knew Haynes had not identified Plaintiff and was simply acting on a hunch because Plaintiff was a young black man in the general vicinity.  This is certainly a reasonable inference a factfinder could draw from Teague's conduct and the body camera footage.  Again, the test for qualified immunity is objective reasonableness.  Teague's self-serving subjective statements are not relevant.

7.  Plaintiff disputes AUMF ¶13.  Again, Haynes did not "implicate" Plaintiff.  This is more question-begging by Defendants.

8.  Plaintiff disputes AUMF ¶14.  Teague had already identified Plaintiff as the assailant to his fellow officers by the time Haynes made these statements.[5]  These statements had no role in officers' detention of Plaintiff as Defendants appear to imply.

---

[5] Dkt. #6 at Ex. A-2, 9:10:49.

4

9. Plaintiff disputes AUMF ¶20. Defendants seem to be implying that Plaintiff was acting voluntarily in some way. Not so. Plaintiff was acting on orders from Defendants.[6]

10. Plaintiff disputes AUMF ¶21. Defendants are surely correct that sometimes suspects will lie about their identities, but whether it was reasonable here is a determination to be made by a jury. In Plaintiff's case, if Plaintiff had really been a gun-wielding assailant who had just chased Haynes around the neighborhood, and then the police came, it is highly unlikely such an assailant would sit in plain view of the officers and his victim, meaning it was in fact quite unlikely that Plaintiff was really Keith Wright and was choosing to conceal his identity. If Plaintiff had really been Keith Wright and wanted to conceal his identity to protect himself from being apprehended, it would have been far more effective not to sit in plain sight on the sidewalk, rather than sit in plain sight but then lie about his identity when the police approached.

11. Plaintiff disputes AUMF ¶22. Defendants again seem to be implying that Plaintiff was acting voluntarily in some way. Plaintiff was being detained by Defendants against his will.[7]

12. Plaintiff disputes AUMF ¶42. Officers did not "conclude" they had reasonable suspicion. The officers' "reasoning" is better described as panicked post-fact justification.

13. Plaintiff disputes AUMF ¶43. There were two criminal complaints, one authored by Trevino that falsely claimed Haynes identified his assailant as wearing a white shirt, gray pants, and having a beard.[8] And then there was an amended criminal complaint Trevino later drafted to

---

[6] Dkt. #6 at Exs. A-4 and A-6 at 9:12:30, *et seq.*
[7] *Id.*
[8] Dkt. #6 at Ex. A-12.

correct his misrepresentation.[9] Defendants have never produced the amended criminal complaint, and they are hiding behind the qualified immunity discovery stay as an excuse not to produce it.[10]

## ARGUMENT

### A. Legal Standard

Summary judgment should be granted where—in light of the pleadings, discovery materials, and any affidavits—there is no "genuine issue" as to any "material fact" and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2). The court may not make determinations of credibility nor weigh evidence, and must disregard all evidence favorable to the movant that the trier of fact would not be required to believe. *Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2001).

Where, as here, defendants move for summary judgment based on qualified immunity, the burden shifts to the plaintiff to show that, on the facts alleged, the defendant violated his or her constitutional or statutory rights and that the right in question was clearly established at the time of the alleged violation. *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009). Plaintiff bears the burden of overcoming a defendant's claim of qualified immunity based on a reasonable mistake of fact. *Deutsch v. Jordan*, 618 F.3d 1093, 1099 (10th Cir. 2010). "Although the plaintiff bears this burden, the evidence is reviewed in the light most favorable to the plaintiff when, as here, the defendant seeks summary judgment on the ground of qualified immunity." *Fletcher v. Burkhalter*, 605 F.3d 1091, 1096 (10th Cir.2010); *see also In re Wal–Mart Stores, Inc.*, 395 F.3d 1177, 1189 (10th Cir. 2005) (court must review the evidence, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party).

---

[9] Cross-Motion at Ex. 5, ¶31.
[10] Trevino's Declaration says he submitted the amended criminal complaint on August 13, 2024, at 3:41 PM. *Id.* But this date and time are from the incident report, which is Ex. A-13 to Dkt. #6.

**B. Plaintiff has met his burden to show Defendants violated his clearly established constitutional rights.**

Plaintiff had a right not to be detained based on an "inchoate or unparticularized suspicion or hunch." *U.S. v. Davis*, 94 F.3d 1465, 1468 (10th Cir. 1996). This right was clearly established as explained by Plaintiff in his Motion [Dkt. #6] and Reply [Dkt. #31] (citing *Romero* and other authority), and Plaintiff incorporates these arguments herein. Defendant cites *Sherouse v. Ratchner*, 573 F.3d 1055 (10th Cir. 2009) to support their "mistake of fact"/qualified immunity defense. But *Sherouse* is easily distinguishable, and Plaintiff points the Court to his Reply brief at pages 5 and 6.

**C. A jury could find that Defendants' mistake was not reasonable.**

Despite its prodigious length, Defendants' "mistake" argument boils down to one conclusory sentence, on page 29, describing the 25 seconds between when Van Zandt first spoke with Haynes and when Teague turned to Thomas to identify Plaintiff:

> "While Mr. Haynes did not offer a physical description of Mr. Wright, the officers reasonably inferred Haynes was pointing to and identifying Plaintiff as 'Keith Wright' after having just identified the vehicle Wright drove at the time of the assault."

Let us break this sentence down. Minus inclusion of the *ipse dixit* word "reasonably," this sentence is surely true. Haynes "did not offer a physical description of Keith Wright," and officers did not ask for one. Officers certainly did **infer** that Haynes was "pointing to and identifying Plaintiff as Keith Wright." That is, Haynes never actually *pointed to* Plaintiff, nor did he *identify* Plaintiff. These are simply **inferences** the officers made. As to the latter part of the sentence, Haynes did

identify a "black car" as "the vehicle Wright drove" though there was no black car in sight.[11]  And Haynes identified the non-existent black car "after" officers made the subject "inference."[12]

But the question is not whether officers inferred Plaintiff was the assailant, which of course they did (via Teague).  The question is, viewing all inferences in the non-movant's favor, could a factfinder conclude that, on an *objective* basis, officers' mistake of fact was unreasonable?  In other words, would a reasonable officer need more than the 25 seconds of Haynes' speaking/gesticulating captured on the lapel cameras to reasonably suspect Plaintiff was the assailant? The answer is surely yes.  Again, let us break down what the officers knew and did not know at this point.  Officers knew that Haynes said a man had pointed a gun at him.  Haynes said: "He was driving a black car, right there in front of that house.  His name is Keith Wright.  Where the suburban is, yeah."[13]  (There was no suburban or darked colored car in front of any house as Defendants admit[14]).  Officers could see Haynes looking toward the west end of the street, but his right hand was gesturing northward with his phone in his hand. And as for Plaintiff, he was hanging out on a sidewalk a football field's length away, doing nothing suspicious.

That is it.  That is all officers knew when Teague decided to have Plaintiff detained.  Now, compare that to what Haynes did not do.  Haynes did not point toward Plaintiff, or even point in the general direction of Plaintiff.  Haynes did not say, "the assailant is that black guy sitting near

---

[11] See Cross-Motion at p.16, AUMF ¶5 ("Neither of the officers were able to see a suburban in the area or a dark in color car parked in front of any house….").
[12] By using the word "after," Defendants are playing word games.  The officers may have leapt to their conclusions "after" Haynes identified the car, but does that mean they did so *because* Haynes identified the car?  No.  It seems just as likely that officers focused on Plaintiff because he was a young black man, and their inference had nothing to do with the car.  A jury is entitled to make this competing *inference*, and it is certainly a reasonable one based on the video.  In any event, officers' subjective beliefs are not relevant for qualified immunity.
[13] Cross-Motion at p.16.
[14] *Id.*

the sidewalk." Haynes did not say, "That guy is Keith Wright," or "Keith Wright is sitting right there."[15] Haynes did not identify his assailant by age, clothing, height, or race. Haynes focused on what type of car Keith Wright drove, but he could not even convey that clearly. Not to mention that Plaintiff was not even in a car. Based on this record, no articulable, specific facts supported the belief that Plaintiff had done anything wrong. The officers did not make a reasonable mistake but rather acted on an unconstitutional hunch. At most this is a fact issue.

### D. Where there are competing factual inferences, courts in the Tenth Circuit consistently reject defendant officers' "reasonable mistake" arguments on summary judgment.

In *Love v. Grashorn*, 134 F.4th 1109, 1111 (10th Cir. 2025),[16] a business owner called police and reported a truck in his parking lot after business hours. Officers responded to the parking lot and exited their units to investigate the truck. *Id.* Two dogs belonging to plaintiffs (who were occupants of the truck) came toward the officers. *Id.* The owner called one of the dogs back, but the other dog, which appeared to be a pit bull,[17] proceeded toward one of the officers. *Id.* When the dog was a few feet away from the officer, the officer shot the dog, and the dog later died from its injuries. *Id.* The dog's owners sued the officer, and the officer moved for summary judgment on qualified immunity grounds, arguing *inter alia* that it was a reasonable mistake for the officer to believe the dog posed an imminent danger. *Id.*

The district court denied defendants' qualified immunity motion, holding that a jury could find the officer's mistake was not reasonable. *Id.* at 1112. The court reasoned that the dog had not been at-large; the owners may have been able to gain control of the dog; an officer could have used

---

[15] Defendants also overlook how Plaintiff shouted, "Uncle Keith" when officers surrounded him, strongly suggesting that Plaintiff was not "Keith." This is further reason why the officers' mistaken acts were not reasonable.
[16] *Love* is certainly being appealed to the U.S. Supreme Court.
[17] The parties in *Love* seemed to agree that the dog looked like a pit bull; it may or may not have been a pit bull. *Love*, 134 F. 4th at n.4.

9

non-lethal means; and the officer had time to respond differently. *Id.* The Tenth Circuit affirmed, reasoning that the presence of immediate danger and whether the officer's mistake was reasonable were quintessential fact issues for the jury. *Id.* at 1112, 1118-19; *see also Singh v. Cordle*, 936 F.3d 1022, 1033 (10th Cir. 2019) (for qualified immunity, "[a] mistake of fact must ... be a reasonable one").

Other "reasonable mistake" cases play out similarly. For example, in *Clerkley v. Holcomb*, 121 F.4th 1359, 1365 (10th Cir. 2024), police shot an unarmed black man who was exiting a house in the middle of the night where a burglary and gunshots had been reported, and where the perpetrators were reported to be black men. The court held it was a fact issue whether the officer made a reasonable mistake. *Id.*

The principle applies equally in the "reasonable suspicion" context. In *Bustillos v. City of Artesia*, 98 F.4th 1022, 1025-26 (10th Cir. 2024) (cited by Defendants), an officer arrested plaintiff for failing to identify himself, an offense that requires reasonable suspicion of a predicate offense. *Id.* The officer-defendant cited reasonable suspicion of trespass and argued plaintiff was lingering outside an oil refinery and may have been trespassing. *Id.* at 1030. The defendant-officer argued that plaintiff was between a concrete barrier and a fence right outside the refinery, which suggested to the officer the plaintiff may have been on private property. *Id.* Even though it turned out that area was public property and did not belong to the refinery, the officer argued he made a reasonable mistake, and was thus entitled to qualified immunity. *Id.* The court rejected defendant's argument and held that a factfinder may find the mistake not to be reasonable. *Id.*

In *Bustillos*, the defendant-officer argued that he "underst[ood]" the refinery "owned all the way to the curb," but the Court declined to consider this subjective statement as the defendant-officer could not provide "specific, articulable" facts to support his understanding. *Id.* at 1030.

10

The court held the officer's subjective belief was "irrelevant" for qualified immunity purposes. *Id.* This is just like Teague's statement in Paragraph 12 of his Declaration where he says he thought Haynes was identifying Plaintiff. Maybe this is true; probably not, and there are certainly competing inferences. But it does not matter. The question is whether an objective basis for reasonable suspicion existed.

Plaintiff submits these other cases are much more difficult circumstances for officers. In the present case, there was no charging pit bull; there was no midnight robbery with suspects fleeing out the back door. There was no oil refinery with ambiguous perimeter barriers. Haynes' reports and gesticulations made no sense. Defendants had plenty of time to inquire further. Indeed, officers could have simply asked Haynes, "is that the guy?" They did not even do that. If the reasonableness of officers' mistakes were fact issues in these other cases, it is surely a fact issue here.

Contrast the above cases with *Powell v. Nunley*, 682 F.Supp.2d 1260 (W.D. Ok. 2010), a case where the district court granted summary judgment to defendants on the grounds of reasonable mistake. In *Powell*, several burglars had stolen firearms, and one of the suspects identified to police the house where his fellow burglars were hiding the guns. *Id.* at 1264. The informer/suspect drew a map of the area and described local landmarks to lead the police to the correct house. *Id.* Investigators consulted local police officers to confirm the exact address, and investigators even contacted the utility company to confirm where the suspects received service. *Id.* Based on the above, investigators obtained a warrant and conducted a no-knock raid on the subject house, which turned out to be the wrong address. *Id.* at 1265. Plaintiffs were the occupants of the wrong house, who sued investigators. Defendants argued qualified immunity based on reasonable mistake.

The court held for defendants, pointing to "the undisputed facts show[ing] that the officers made a reasonable, albeit unsuccessful, effort to identify the house to be searched." *Id.* The court conceded there were "various things" police could have done pre-entry that "would have revealed the mistake." *Id.* But 20/20 hindsight was not the test. *Id.* The test was whether investigators made a reasonable effort to identify the proper location. *Id.*

Now compare *Powell* with the facts here. Teague did not make a "reasonable, albeit unsuccessful, effort to identify" Haynes' assailant. Indeed, he made no effort *at all* to determine whether his hunch was correct before dispatching officers to detain Plaintiff. He jumped to that conclusion based on virtually nothing. *Powell* is important because it shows the sort of facts that will support summary judgment based on a defense of reasonable/honest mistake.

*Powell* is essentially the inverse of the present case. In *Powell*, there was no contention that investigators acted on a hunch. Quite the opposite—the opinion in *Powell* discussed all the steps they followed to find the right address. Yes, investigators could have done more to investigate the correct address, but they had a reasonable basis for believing the suspects to be in the designated house. Put differently, the *Powell* defendants used a constitutional process that, unfortunately, yielded a bad result. In the present matter, the officers used an unconstitutional process, which ends the analysis—Defendants' motion would be unconstitutional even if Plaintiff had turned out to be Keith Wright.

**E. Summary judgment is improper on Plaintiff's New Mexico Civil Rights Act claim.**

Plaintiff agrees the same reasonable suspicion rule applies under the New Mexico Constitution as under the Fourth Amendment. But qualified immunity does not apply under the New Mexico Civil Rights Act ("NMCRA"). N.M. Stat. 41-4A-4 ("In any claim for damages or relief under the [NMCRA], no public body or person acting on behalf of, under color of or within

12

the course and scope of the authority of a public body shall enjoy the defense of qualified immunity for causing the deprivation of any rights, privileges or immunities secured by the bill of rights of the constitution of New Mexico."). Hence Defendants are entitled to no presumptions, and the burden is squarely on Defendants to prove as a matter of law that no reasonable factfinder could conclude their mistake was unreasonable. This is an even higher burden for Defendants to meet than under the federal claim, and so for the same reasons as described above, Defendants' motion should be denied as to Plaintiff's NMCRA claim.[18]

## CONCLUSION

For these reasons and those set forth in Plaintiff's Motion for Partial Summary Judgment and Plaintiff's Reply Brief, Defendants' Cross-Motion for Summary Judgment should be denied. Plaintiff seeks all other relief to which he may be entitled at law or in equity.

Date: September 19, 2025

                    Respectfully submitted,

                    WGLA, LLP

                    */s/ Curtis Waldo*

                    Benjamin Gubernick (SBN 145006)
                    Curtis Waldo (SBN 163604)
                    Ben@wglawllp.com
                    curtis@wglawllp.com
                    346-394-8056
                    717 Texas St., Suite 1200
                    Houston, TX 77002

                    *Attorneys for Plaintiff*

---

[18] Defendants rely on *State v. Arredondo*, 1997-NMCA-081 in this portion of their brief, but Plaintiff already explained why this case was inapposite in his Reply. *See* Dkt. #31 at 8-9.

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 19th day of September, 2025, I caused the foregoing document to be served on all counsel of record in compliance with the Federal Rules of Civil Procedure.

                                                     */s/ Curtis Waldo*

                                                             Curtis Waldo